UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK P. DUFF,

      Plaintiff,

vs.

Case No. 17-CV-13930
HON. GEORGE CARAM STEEH

FCA US, LLC and
CARL J. MISSBACH,

      Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(1) FOR LACK
OF SUBJECT MATTER JURISDICTION (ECF No. 44)**

In this diversity action, Plaintiff Derek Duff has brought a negligence claim against Defendants FCA US, LLC ("FCA") and Carl Missbach ("Defendants") arising out of injuries Duff sustained in a motor vehicle accident on June 17, 2015, while he was working to test Chrysler vehicles in Aurora, Colorado. Plaintiff alleges Missbach, an FCA employee, negligently struck him while driving a 2015 Jeep Cherokee Laredo. Now before the court is Defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants argue Duff was a citizen of Michigan at the time the lawsuit

- 1 -

was filed; thus, they claim there is no diversity jurisdiction.  Because Duff has established that at the time this lawsuit was filed, he was a citizen of Maine, his childhood home where he had resided for 26 of his 27 years, and where he was residing with his parents in order to treat for his serious injuries and to receive daily living assistance, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332, and Defendants' motion shall be denied.

## I. Factual Background

Duff was born in Bangor, Maine, where he grew up and attended high school.  He then attended the University of Maine at Orono.  After graduating with a bachelor's degree in mechanical engineering, he accepted a position with IAV and moved to Michigan for his employment in September, 2014.  He obtained a Michigan driver's license and Michigan no-fault insurance on his automobile, and leased an apartment for one year.  After living in Michigan for ten months, he was injured on the job while working in Colorado on June 17, 2015.  After in-patient hospitalization and rehabilitation in Denver, Colorado, Duff moved back to Maine, where he continues to live with his parents at their home, and who provide him with care and support as he attempts to recover from his severe injury to his leg.

To date, Duff requires daily living assistance and cannot live independently. Upon his return to Maine, Duff's father and brother-in-law cleaned out his Michigan apartment and brought his personal possessions back to Maine. He did not renew his apartment lease. Following his accident, Duff has undergone 18 surgeries to save his leg, his most recent one involved implantation of a biological knee joint from a cadaver donor. While Duff's dream is to relocate to Arizona, or a similar climate, which would be more comfortable for him given his injuries, for the foreseeable future and until he is able to live on his own, he intends to reside with his parents, as he has for the last four years.

The only connection Duff continues to maintain to Michigan is that he still has a Michigan's driver's license and Michigan automobile insurance. On the other hand, since returning to his childhood home, Maine is listed as Duff's official mailing address, as his residence on his tax returns, and as the legal address on all of his accounts including his credit card. Duff is registered to vote in Maine. The majority of his treating physicians and therapists, numbering close to a dozen, are located in Maine; all of his family and friends are in Maine, and Duff has a new job for which he works from his home in Maine. His new employer, who is located in Arizona, but for whom he works remotely, had him sign a non-compete agreement

which lists Maine as his principal place of business. Duff also listed Bradley, Maine, as his residence in his application for social security disability benefits, his attorney and accountant are located in Maine, all of his banking is through Bangor Savings Bank of Maine, he has a Maine fishing license which lists Maine as his residence, and he attends church in Maine.

## II. Standard of Law

"A Rule 12(b)(1) motion addresses whether the Court has authority or competence to hear a case." *Gilbert v. Ferry*, 298 F. Supp. 2d 606, 611 (E.D. Mich. 2003). "[D]iversity of citizenship requires complete diversity between all plaintiffs on one side and all defendants on the other side." *Glancy v. Taubman Ctrs., Inc.,* 373 F.3d 656, 664 (6th Cir. 2004). Diversity of citizenship for purposes of 28 U.S.C. § 1332 is determined at the time the complaint is filed. *Kaiser v. Loomis,* 391 F.2d 1007, 1009 (6th Cir.1968) (citations omitted); *Bateman v. E.I. Dupont De Nemours & Co.*, 7 F. Supp. 2d 910, 911 (E.D. Mich. 1998). It is well established that citizenship for purposes of the diversity requirement is equated with domicile, not residence. *Von Dunser v. Aronoff,* 915 F.2d 1071, 1072 (6th Cir.1990); *see Kaiser,* 391 F.2d at 1009. "To acquire a domicile within a particular state, a person must be physically present in the state and must

have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." *Stifel v. Hopkins,* 477 F.2d 1116, 1120 (6th Cir. 1973) (citations omitted); *see also Von Dunser,* 915 F.2d at 1072 ("Establishment of a new domicile is determined by two factors: residence in the new domicile, and the intention to remain there."); *Kaiser,* 391 F.2d at 1009 (same).

The party invoking diversity jurisdiction must prove complete diversity by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189 (1936); *Everett v. Verizon Wireless, Inc.,* 460 F.3d 818, 829 (6th Cir. 2006). Moreover, a person can only have one domicile at a time for purposes of diversity jurisdiction—a previous domicile can not be lost until another is adequately established. *Eastman v. Univ. of Michigan,* 30 F.3d 670, 672–73 (6th Cir.1994); *see also Von Dunser,* 915 F.2d at 1072.

To determine the domicile of a party for purposes of considering whether diversity jurisdiction exists, courts typically take into account a variety of factors indicating the extent of a particular party's ties to the purported domicile. These include, but are not limited to:

> [c]urrent residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions;

fraternal organizations, churches, clubs and other associations; place of employment or business; driver licenses and other automobile registration; [and] payment of taxes.

*Persinger v. Extendicare Health Servs., Inc.*, 539 F. Supp. 2d 995, 996–97 (S.D. Ohio 2008) (citing 13B Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3612 (2d ed.1984)). Courts also consider the location of a plaintiff's physician, lawyer, accountant, and other service providers. *Bateman*, 7 Supp. 2d at 912. No single one of these factors is dispositive, and the analysis does not focus simply on the number of contacts with the purported domicile, but also their substantive nature. *Persinger*, 539 F. Supp. 2d at 997. In sum, domicile is "the place where a person dwells and which is the center of his domestic, social, and civil life." *Bateman*, 7 F. Supp. 2d at 912.

### III. Analysis

Duff has established by a preponderance of the evidence that he was a citizen of Maine at the time this lawsuit was filed. He has demonstrated (1) a significant connection to the State of Maine, and (2) an intent to remain in Maine until he can live independently without the care and support of his parents who have been assisting him in his daily living since

he was released from hospitalization and rehabilitation in the fall of 2015. The court analyzes these two elements below.

**A.     Connection to Maine**

As outlined above, Duff's entire life, social and family connections, medical care and professional services have been in Maine since 2015. But Defendants argue that Duff is a citizen of Michigan because he accepted employment in Michigan in 2014, accepted a relocation bonus, secured temporary housing, and obtained a Michigan driver's license and automotive insurance which he continues to maintain to the present time. At his deposition, Duff testified that he kept his Michigan driver's license because emotionally it was hard for him to accept that he is back to Maine as it was his "plan to move on with [his] life." (ECF No. 59, Ex. B at PageID 1668). Although the evidence shows that Duff intended to make Michigan his home when he accepted employment in 2014, when he filed this lawsuit in 2017, he had been living in Maine for over two years and was unable to move on from his parents' home due to the medical care and daily living assistance he required as a result of the accident giving rise to this lawsuit. For the past four years, Duff's life has revolved around doctor visits, physical therapy, managing and weaning off pain medication, and learning how to adjust to life with a significant disability. All of this has taken place

in Maine at his parents' home, and it is indeterminate when Duff will be able to live without their daily assistance.

Many factors establish that Duff has significant ties to Maine. Maine is the place where he has lived continuously since 2015, receives medical care, banks, votes, attends church, and works from home. It is also his legal residence which is he listed on his tax returns and application for government benefits. Duff's strong connections to Maine support the conclusion that he is domiciled in Maine.

**B.      Intent to Remain**

Duff has also established an intent to remain in Maine indefinitely. The court rejects Defendants' argument that Duff is not a citizen of Maine because he does not intend to stay there but remains a citizen of Michigan where he lived for ten months from 2014 to 2015. Defendants argue that Duff's and his father's deposition testimony establishes that Duff's intent when he moved to Michigan was to remain there permanently. Defendants also argue that Duff intends to move to Arizona, or another warmer climate that will be more comfortable given his medical condition, not to stay in Maine; thus, Maine cannot be his domicile. Defendants further argue that this court may not consider Duff's affidavit to the extent it conflicts with his

deposition testimony.  Again, the court rejects this argument as there is no conflict between Duff's deposition testimony and his affidavit.  While Duff planned to remain in Michigan when he accepted employment with IAV, and hopes to someday move out of his parents' home in Maine, the reality is that at the time he filed this lawsuit, he had been living continuously in Maine for over two years, had re-established significant contacts with the State where he had lived in for all but 10 months of his 27 years of life, and was unable to fulfill his dream of moving on with his life because of the medical care and daily living assistance he required as a result of the accident giving rise to this lawsuit.

The cases Defendants rely upon are inapposite.  In *Lim v. Chisato Nojiri & Terumo Americas Holdings, Inc.*, No. 10-CV-14080, 2011 WL 1626551, at *1 (E.D. Mich. Apr. 28, 2011), the court found that Plaintiff's domicile was in Michigan, not in his former residence in Virginia despite certain connections he maintained to that state because at the time he filed the lawsuit, Plaintiff had:

> (1) constructed and purchased a home in Michigan, (2) voluntarily executed, filed with the State of Michigan and did not rescind a "Principal Residence Exemption Affidavit" which admits that Michigan is Plaintiff's "permanent home"—"the place to which [he] intend[s] to return to whenever [he] go[es] away;" (3) filed a 2010 W–4 Withholding Certificate with the State of Michigan listing his

>Ann Arbor address; (4) continued to use his Michigan mailing address for his court proceedings, both in this action and in litigation against another former employer in the United States District Court, District of Maryland; (5) moved to and now resides and works in Madison, Wisconsin, not Virginia; (6) did not list his Michigan home for sale until October 21, 2010, after filing the instant Complaint; and (7) searched for jobs in thirteen different states following his termination, none of which was Virginia, where Plaintiff conceded there was no work commensurate with his education and training.

*Id.* at *1. Unlike the plaintiff in *Lim*, Duff never purchased a home which he owned at the time he filed his lawsuit, and Duff returned to his childhood home, unlike the plaintiff in *Lim* who never returned to his prior residence after accepting permanent employment in Michigan.

Likewise, *Ford Motor Co. v. Collins*, No. 11-15011, 2011 WL 5877216, (E.D. Mich. Nov. 23, 2011) is distinguishable. In that case, Ford sued its former high-level executive for breach of a non-compete agreement. *Id.* at *1. At the time the lawsuit was filed, Defendant was still living in Michigan where he owned a home despite the fact that he had accepted another job offer in Texas. *Id.* at *3. Because diversity is determined at the time the lawsuit was filed, and Defendant was living in Michigan, among other factors, at that time, the court found that Defendant was a citizen of Michigan. *Id.* at *4. By contrast, when this lawsuit was filed, Duff had been residing in Maine continuously for over two years.

Upon review of Duff's ties to Maine, his required medical care for which he is treating with physicians and therapists in Maine, and the daily living assistance provided by his parents at their home in Maine, the court finds that at the time the lawsuit was filed, Duff was both physically present in Maine and had the requisite intent to make Maine his home indefinitely; thus, Duff's domicile is Maine. Accordingly, there is complete diversity, and this court has subject matter jurisdiction over the instant dispute.

## IV. Conclusion

For the reasons set forth above, Defendants' motion to dismiss for lack of subject matter jurisdiction (ECF No. 44) is DENIED.

**IT IS SO ORDERED.**

Dated: November 8, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

On November 8, 2019, copies of this Order were served upon attorneys of record by electronic and ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---